FORT v. STATE
2022 OK CR 12
Case Number: F-2020-659
Decided: 07/21/2022
AARON LAMAR FORT, Appellant v. THE STATE OF OKLAHOMA, Appellee
Cite as: 2022 OK CR 12, __ __

 

 

O P I N I O N

ROWLAND, PRESIDING JUDGE:

¶1 Aaron Lamar Fort was tried by jury in the District Court of Oklahoma County, Case No. CF-2019-1278, and convicted of Trafficking in Illegal Drugs in violation of 63 O.S.Supp.2018, § 2-415

¶2 Fort appeals his Judgment and Sentence raising the following issues:

(1) whether the trial court committed structural error when the trial judge sexually assaulted and/or had an illicit affair with the prosecuting attorney on this case which resulted in judicial bias;

(2) whether the State failed to prove the chain of custody of the drugs which should have resulted in suppression of the evidence;

(3) whether the trial court committed reversible error by failing to instruct the jury on the lesser related offense of misdemeanor possession in violation of his right to a fair trial under the state and federal constitutions; and

(4) whether trial errors, when considered cumulatively, warrant a new trial.

¶3 We find relief in the form of a new trial is required on Fort's claim of judicial bias in Proposition One, so his other claims are moot. The State concedes that relief is required.

1. Claim of Judicial Bias 

A. Background

¶4 Fort notes in his first proposition that after the conclusion of his trial, facts were brought to light that the trial judge, then-District Judge Timothy Henderson, was, at the time of trial, engaged in a sexual relationship with Assistant District Attorney C.T.

¶5 On October 27, 2021, this Court remanded the case to the District Court of Oklahoma County for an evidentiary hearing on the claims contained within Fort's first proposition pursuant to Rule 3.11(A), Rules of the Court of Criminal Appeals, Okla. Stat. Ch. 18, App. (2022).

B. Findings of Fact and Conclusions of Law on Remand

¶6 In Findings of Fact and Conclusions of Law filed in this Court on February 28, 2022, the district court found, in relevant part, that Fort was charged with trafficking in illegal drugs and the case was assigned to Judge Henderson. The district court found that while they were involved in a sexual relationship, prosecutor C.T. appeared before Henderson for the State at a pretrial conference, a Jackson v. Denno hearing, the jury trial, and sentencing proceeding. The district court further found that neither Henderson nor prosecutor C.T. disclosed the sexual relationship to Fort or his attorneys before or during Fort's trial. The court found that because Fort's attorneys had no knowledge of the relationship prior to or during the jury trial, they were unable to request recusal or otherwise raise the issue of bias below. The district court found that defense counsel would have requested that Henderson recuse had they known of the sexual relationship between Henderson and prosecutor C.T.

¶7 In its conclusions of law, the district court accurately stated that this Court has held that, "'[t]he Oklahoma Constitution guarantees a defendant a right to a fair, impartial trial not tainted by the personal bias or prejudice of the trial court.'" Welch v. State, 2000 OK CR 82 P.3d 356Fitzgerald v. State, 1998 OK CR 68972 P.2d 1157See also Okla. Const. art. 2, § 6. The federal due process clause requires the same. In re Murchison, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). See also Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases."); U.S. Const. amend. V, XIV.

¶8 The district court added, in its conclusions of law, that, "[i]n order to maintain and foster proper respect and confidence of the people in the courts, the courts must be presided over by unprejudiced, unbiased, impartial, and disinterested judges and all doubt and suspicion to the contrary must be jealously guarded against." Castleberry v. Jones, 68 Okla. Crim. 414, 424, 99 P.2d 174Peters v. Kiff, 407 U.S. 493, 502 (1972). See also Williams v. Pennsylvania, 579 U.S. 1, 8 (2016) (a showing of actual subjective bias is not required to establish a due process violation). Rather, as the district court noted, "there are objective standards that require recusal when 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 872 (2009) (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)). The district court found that the facts of the present case present the unconstitutional potential for bias admonished against in Caperton.

¶9 Based upon the forgoing findings of fact and conclusions of law, the district court concluded that Fort was denied his constitutional right to due process. The court stated that, "[a] new trial is the only adequate remedy to redress [Fort's] denial of due process of law. Also, a new trial is necessary in order to preserve the integrity and reputation of our criminal justice system."

2. Legal Analysis

¶10 "Every person accused of crime is entitled to nothing less than the cold neutrality of an impartial judge, and where the circumstances are of such a nature as to cause doubts as to the impartiality of a judge, the error, if any, should be made in favor of the disqualification rather than against it. . . ." State ex rel. Vahlberg v. Crismore, 90 Okla. Crim. 244, 247, 213 P.2d 293

¶11 Ordinarily, we review the trial judge's decision not to recuse for an abuse of discretion, and one challenging it must show prejudice resulting from that decision. Fitzgerald, 1998 OK CR 68

¶12 "There is a strong presumption that errors which occur during trial are subject to harmless error analysis, as long as a defendant is represented by counsel and is tried by an impartial judge." Robinson v. State, 2011 OK CR 15255 P.3d 425Neder v. United States, 527 U.S. 1, 8 (1999)). As the United States Supreme Court has noted, showing actual, subjective bias, is very difficult and thus that Court employs an objective analysis when considering claims of judicial bias under a due process standard. "The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is "likely" to be neutral, or whether there is an unconstitutional "potential for bias".'" Williams, 579 U.S. at 8 (quoting Caperton, 556 U.S. at 881). See also Caperton, 556 U.S. at 883 (reviewing court should take into account "a realistic appraisal of psychological tendencies and human weakness . . .").

¶13 When this Court remands a case for an evidentiary hearing, we afford great deference to the district court's findings of fact and conclusions of law. McCarty v. State, 2005 OK CR 10114 P.3d 1089Duclos v. State, 2017 OK CR 8400 P.3d 781Robinson, 2011 OK CR 15

¶14 The Judgment and Sentence of the District Court is REVERSED and REMANDED for a NEW TRIAL. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022), the MANDATE is ORDERED to issue upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT
OF OKLAHOMA COUNTY, 
THE HONORABLE TIMOTHY R. HENDERSON, 
DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL

 KIM MILLER
 BAILEY DAUGHERTY
 ASST. PUBLIC DEFENDERS
 320 ROBERT S. KERR, STE. 400
 OKLAHOMA CITY, OK 73102
 COUNSEL FOR DEFENDANT
 
 
 APPEARANCES ON APPEAL

 HALLIE ELIZABETH BOVOS
 ASST. PUBLIC DEFENDER
 320 ROBERT S. KERR AVE.,
 STE. 400
 OKLAHOMA CITY, OK 73102
 COUNSEL FOR APPELLANT
 
 
 
 
 RACHEL THOMPSON
 C.T.
 ASST. DISTRICT ATTORNEYS
 320 ROBERT S. KERR, STE. 505
 OKLAHOMA CITY, OK 73102
 COUNSEL FOR STATE

  

  

 APPEARANCES ON REMAND

 HALLIE ELIZABETH BOVO
 AMANDA HOLDEN
 ASST. PUBLIC DEFENDERS
 320 ROBERT S. KERR AVE.,
 STE. 400
 OKLAHOMA CITY, OK 73102
 COUNSEL FOR APPELLANT

  

 BRIAN HERMANSON
 ROB DAVIS
 ASST. DISTRICT ATTORNEYS
 201 S. MAIN STREET
 NEWKIRK, OK 74647
 COUNSEL FOR STATE
 
 
 JOHN M. O'CONNOR
 ATTORNEY GENERAL
 OF OKLAHOMA
 SHERI M. JOHNSON
 ASSISTANT ATTORNEY
 GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

 

OPINION BY: ROWLAND, P.J.
HUDSON, V.P.J.: Specially Concur
LUMPKIN, J.: Dissent
LEWIS, J.: Specially Concur
MUSSEMAN, J: Concur

FOOTNOTES

Peters, 407 U.S. at 502. The lack of an impartial trial judge constitutes structural error where harm is presumed. Robinson, 2011 OK CR 15

 

 

HUDSON, VICE PRESIDING JUDGE, SPECIALLY CONCUR:

¶1 A basic requirement of due process is a fair tribunal. "Not only is a biased decisionmaker constitutionally unacceptable but our system of law has always endeavored to prevent even the probability of unfairness." Withrow v. Larkin, 421 U.S. 35, 47 (1975) (internal quotations omitted). In the pursuit to ensure a fair tribunal, the United States Supreme Court has identified various situations "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." Id. This case presents this Court with just such a situation.

¶2 The pivotal issue here is whether an impermissible risk, i.e. an unconstitutional risk, of actual bias on the part of Judge Henderson existed in this case. See Williams v. Pennsylvania, 579 U.S. 1 (2016). Common sense tells us it did. Indeed, the risk that Judge Henderson's sexual relationship with the prosecutor, consensual or otherwise, "engendered actual bias is sufficiently substantial that [this type of scenario] 'must be forbidden if the guarantee of due process is to be adequately implemented.'" Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 885 (2009) (quoting Withrow, 421 U.S. at 47).

¶3 The dissent erroneously analyzes Fort's judicial bias claim under the plain error doctrine. Fort only learned of the sexual relationship between Henderson and prosecutor post-verdict. Fort cannot be penalized for his ignorance of this sordid relationship when he proceeded to trial. Moreover, the Supreme Court has not imposed a requirement of establishing prejudice in order to establish a Due Process Claim based on judicial bias. See Williams, 579 U.S. at 8. To the contrary, actual evidence of bias resulting in prejudice need not be shown to garner relief when the probability of actual bias on the part of the judge is too high to be constitutionally tolerable. As the Court in Williams observed,

Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself. When the objective risk of actual bias on the part of a judge rises to an unconstitutional level, the failure to recuse cannot be deemed harmless.

Id. at 16.

¶4 An impermissible risk of actual bias undoubtedly exists when a trial judge is engaged in a sexual relationship with one of the parties' attorneys. Judge Henderson's unconstitutional failure to recuse constitutes structural error that is not subject to a harmless error analysis. Williams, 579 U.S. at 16. Fort must be granted an opportunity to have his case tried before "a court unburdened by any 'possible temptation . . . not to hold the balance nice, clear and true between the State and the accused.'" Id. at 16 (quoting Tumey v. Ohio, 273 U.S. 510, 532 (1927)). Justice and our critical need for public legitimacy demand such relief. For these reasons, I specially concur in today's decision reversing Fort's conviction and remanding his case for new trial.

 

 

LUMPKIN, J., DISSENTING:

¶1 I realize that legal professionals, especially judges, will viscerally respond when confronted with the allegations, if proven true, in this case. These allegations reflect not only unprofessional, immoral, and reprehensible acts, but also possibly criminal. However, this Court is not a professional tribunal tasked with the responsibility of determining what action should be taken to punish any professional misconduct; this Court is responsible for applying the law and the facts to determine if Appellant was denied due process in his jury trial.

¶2 The Court's opinion seems to find that "ipso facto" a new trial must be granted if it is shown a judge engaged in an improper relationship with one of the prosecuting attorneys in a jury trial without even examining the record of the jury trial proceedings. To me, this methodology focuses not on whether any action occurred in the jury trial that reflected a judge's bias that denied the Appellant a fair trial, but instead on the out-of-court actions of the judge, i.e. the unprofessional conduct that should be reviewed for disciplinary purposes.

¶3 This Court is a court of law that must base its decisions on the law and the facts applicable in a particular case. Here, the Court makes no reference to what took place in Appellant's trial but assumes and speculates there must be bias against Appellant regardless of the lack of actual evidence of bias. We must remember Appellant's trial was a jury trial, not a judge alone bench trial.

¶4 The Court analyzes this claim of error under the plain error doctrine. The first step under the plain error doctrine is to identify an actual error in the trial proceedings. See Brumfield v. State, 2007 OK CR 10155 P.3d 826Stouffer v. State, 2006 OK CR 46147 P.3d 245Fitzgerald v. State, 1998 OK CR 68972 P.2d 1157Bryan v. State, 1997 OK CR 15935 P.2d 338Carter v. State, 1994 OK CR 49879 P.2d 1234

¶5 Here, Appellant's claim fails to two reasons. First, he has failed to allege any specific rulings or actions by the trial court that prejudiced him, materially affected his rights at trial, or denied him a fair trial. Second, this Court has not reviewed the record to determine whether any rulings by the trial judge indicated any bias or prejudiced Appellant's rights to a fair trial.

¶6 The issue at this stage of the proceedings is not whether the Appellant could have sought and received a different judge to try his case, but whether there is a showing of any bias in the judge's rulings that deprived Appellant of a fair jury trial. I have thoroughly reviewed the record in this case and find Appellant has failed to overcome the presumption of judicial impartiality and nothing in the record indicates the conduct and rulings of the trial judge denied him a fair and impartial trial.

¶7 We all accept the fact the trial judge failed to follow the Oklahoma Code of Judicial Conduct and may be subject to discipline for those violations. But, the Code of Judicial Conduct deals with actions by a judge and not what happens in the jury trial of a criminal case. Justice Thomas, in his dissent to Williams v. Pennsylvania, 579 U.S. 1 (2016), sets forth a history of the law regarding judicial bias. He makes a strong argument that the conduct presented here does not fall under the Due Process Clause but is a matter for state legislatures and bar associations. As Justice Thomas stated, "[t]he specter of bias alone in a judicial proceeding is not a deprivation of due process. Rather than constitutionalize every judicial disqualification rule, the Court has left such rules to legislatures, bar associations, and the judgment of individual adjudicators." Id. at 24.

¶8 Justice Thomas explained:

At common law, a fair tribunal meant that "no man shall be a judge in his own case." That common-law conception of a fair tribunal was a narrow one. A judge could not decide a case in which he had a direct and personal financial stake. . . . Nor could he adjudicate a case in which he was a party. But mere bias--without any financial stake in a case--was not grounds for disqualification. The biases of judges "cannot be challenged," according to Blackstone, "[f]or the law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea."

The early American conception of judicial disqualification was in keeping with the "clear and simple" common-law rule--"a judge was disqualified for direct pecuniary interest and for nothing else." Most jurisdictions required judges to recuse when they stood to profit from their involvement or, more broadly, when their property was involved. But the judge's pecuniary interest had to be directly implicated in the case.

Id. at 29-30 (internal citations omitted).

Drawing from longstanding historical practice, the [Supreme] Court announced that the Due Process Clause compels judges to disqualify in the narrow circumstances described below. But time and again, the Court cautioned that "[a]ll questions of judicial qualification may not involve constitutional validity." And "matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion."

First, in Tumey [v. Ohio, 273 U.S. 510 (1927)], the Court held that due process would not tolerate an adjudicator who would profit from the case if he convicted the defendant. The Court's holding paralleled the common-law rule: "[I]t certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." Later, applying Tumey's rule in Aetna Life Ins., the Court held that a judge who decided a case involving an insurance company had a "direct, personal, substantial, and pecuniary" interest because he had brought a similar case against an insurer and his opinion for the court "had the clear and immediate effect of enhancing both the legal status and the settlement value of his own case."

Second, in In re Murchison the Court adopted a constitutional rule resembling the historical practice for disqualification of former counsel. There, state law empowered a trial judge to sit as a "'one man judge-grand jury,' " meaning that he could "compel witnesses to appear before him in secret to testify about suspected crimes." During those secret proceedings, the trial judge suspected that one of the witnesses, Lee Roy Murchison, had committed perjury, and he charged another, John White, with contempt after he refused to answer the judge's questions without counsel present. The judge then tried both men in open court and convicted and sentenced them based, in part, on his interrogation of them in the secret proceedings. The defendants appealed, arguing that the "trial before the judge who was at the same time the complainant, indicter and prosecutor, constituted a denial of fair and impartial trial required by" due process. This Court agreed: "It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations." Broadly speaking, Murchison's rule constitutionalizes the early American statutes requiring disqualification when a single person acts as both counsel and judge in a single civil or criminal proceeding.

Both Tumey and Murchison arguably reflect historical understandings of judicial disqualification. Traditionally, judges disqualified themselves when they had a direct and substantial pecuniary interest or when they served as counsel in the same case.

Id. at 33-36 (certain internal citations omitted).

¶9 Reviewing the historical basis for the application of judicial bias, together with Justice Thomas's analysis of the subject, raises the question as to whether the facts of this case present a due process issue in the first instance.

The perceived bias that the majority fears is instead outside the bounds of the historical expectations of judicial recusal. Perceived bias (without more) was not recognized as a constitutionally compelled ground for disqualification until the Court's recent decision in Caperton v. A.T. Massey Coal Co. In Caperton, the Court decided that due process demanded disqualification when "extreme facts" proved "the probability of actual bias." Caperton, of course, elicited more questions than answers. And its conclusion that bias alone could be grounds for disqualification as a constitutional matter "represents a complete departure from common law principles."

Id. at 37 (internal citations omitted).

¶10 Justice Thomas's analysis points out the importance of putting quotes from opinions in context of the entire case from which they are drawn. While the quoted language used in this Court's majority opinion are all correct, the context and facts of the cases from which they come must be considered in applying the law in a consistent and correct manner.

¶11 I greatly respect my colleagues and empathize with the professional outrage that a judge could engage in the type of conduct presented in this case. However, I have always looked to the facts of each case presented to form the result dictated by the law. Here, Appellant has presented no facts to indicate he was denied due process in this case via the actions of the judge. If there was bias, it would be reflected in the trial record. It is not too much to require such evidence in the record, and such a requirement would not "exacerbate the wrong clearly present in this case", as the Court's opinion states. The majority opinion fails to state that the judge had any personal interest in the outcome of Appellant's case or that there was a showing of animus toward Appellant. Those factual requirements cannot be inferred from the judge's relationship with the prosecutor.

¶12 In this case, Appellant hangs his hat on the allegation of the judge's relationship, not related to court proceedings, and without proof or reference to the record to support the proposition of error. The only other allegations of error relate to chain of custody of evidence and the failure to give a lesser included offense instruction, neither of which has merit. When no error is shown, there can be no cumulative error. Therefore, on the merits, the judgment and sentence should be affirmed. Accordingly, I dissent to the Court's action in this case.

FOOTNOTES

Caperton, 556 U.S. 868 (2009), a candidate for the West Virginia Supreme Court accepted campaign contributions from Massey Coal Company, far exceeding the total amount contributed by all of his other supporters and his own campaign committee. The candidate won the election to the state supreme court and shortly thereafter participated in Massey's appeal of a $50 million adverse judgment from a lower court. The newly elected justice refused all requests to recuse from the case. The West Virginia Supreme Court, including the new elected justice, ultimately reversed the lower court's verdict.

 

 

LEWIS, JUDGE, Specially Concurring:

¶1 The United States Constitution and the Oklahoma Constitution both require an impartial tribunal. See e.g., Fitzgerald v. State, 1998 OK CR 68972 P.2d 1157Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980). Our Constitutions require this because it creates the foundation of fairness upon which our judicial system stands.

¶2 I agree with my esteemed colleague, Judge Lumpkin that this case is solely about fairness, i.e. due process of law. Nothing strikes more at the heart of due process than a trial judge having sexual relations with the prosecutor in the midst of a trial. Judges take an oath to conduct themselves in accordance with The Code of Judicial Conduct. The preamble of the code reads, "An independent, fair and impartial judiciary is indispensable to our system of justice . . . [Judges] should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence." Code of Judicial Conduct, pmbl. ¶¶ 1-2, 5 O.S.Supp.2019, Ch. 1, App. 4.

¶3 Judge Henderson knew he should have recused himself in any proceeding where his "impartiality might be reasonably questioned," including situations where the court's probable bias "[concerns] a party or a party's lawyer." Canon 2, Rule 2.11(A)(1), Code of Judicial Conduct, 5 O.S.Supp.2019, Ch. 1, App 4. Judge Henderson's and the prosecutor's actions created a serious "defect" in the "trial mechanism," which in some ways "[defies] analysis by 'harmless-error' standards." Arizona v. Fulminante, 499 U.S. 279, 290-91 (1991). There is no need to search the trial record for individual errors when the actions taken in this case created a defect in the basic trial mechanism; a defect that can only be remedied by a new trial.