CARLSON, Presiding Justice,
dissenting:
¶ 40. I agree with the plurality’s speedy-trial analysis, but I disagree with its resolution of the Batson issue. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Although Hardison raised nine issues in his pro se brief, the plurality reviews only his speedy-trial claim, which it finds to be without merit, and the Batson claim, which the plurality finds to be ease-dispositive. The plurality holds that the trial judge committed re *1103 versible error because he improperly conflated the second and third prongs of the Batson analysis — i.e., the trial court determined that the explanation for the strike was a mere pretext without first determining whether the reason was race-neutral. I would hold that the Batson issue raised by the plurality was not argued by the defendant, and thus should not be addressed on appeal. Notwithstanding the plurality addressing an issue not raised, no injustice should be presumed when a jury is equally balanced, racially, as in today’s case. I would find that the trial judge correctly applied the three prongs of Bat-son, despite his inarticulate terminology. Finally, even assuming arguendo that the trial judge did not apply Batson correctly, I would find that any error was harmless.
¶ 41. But, with this being said, of significant concern is the plurality’s silence regarding the constitutional right of the targeted juror, James Gray (who was otherwise qualified) to sit on a jury, which is an equally important holding of Batson. In Batson, the U.S. Supreme Court held that:
[T]he Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors. By denying a person participation in jury service on account of his race, the State also unconstitutionally discriminates against the excluded juror. Moreover, selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice.
Batson, 476 U.S. at 79, 106 S.Ct. 1712. In Georgia v. McCollum, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), Batson was extended to cover peremptory challenges exercised by a criminal defendant. So today, in light of Batson and McCol-lum, regardless of the race of the defendant and the race of the juror targeted by a peremptory challenge exercised by the State or the defendant, no peremptory challenge may be exercised in a racially discriminatory manner. See Henley v. State, 729 So.2d 232, 239 (Miss.1998).
¶ 42. As I would affirm the judgment of the trial court on the Batson issue, I dissent.
FACTS
¶ 43. During voir dire, the State had the following exchange with veniremember Gray:
Q: You have been on a criminal jury before?
A: A long, long time ago.
Q: Do you remember what kind of case it was?
A: It was — I think it was an armed robbery case. It’s been so long ago since I was on the jury.
Q: Was that in Hinds County?
A: It was. It was right here.
Q: And do you remember if y’all were able to reach a verdict?
A: I think that the D.A.’s office failed to do something and the judge threw the case out.
Q: Okay. So y’all didn’t even get to that point?
A: Unh-unh.
Q: Okay. So that was so long ago [that] neither Gregg [nor] I[was] involved with that; right?
A: No.
After the State finished its voir dire, Har-dison’s counsel had the following exchange with Gray:
Q: I believe you said you had been on a criminal jury?
A: Yes, sir.
Q: Did you reach a verdict?
*1104 A: No. And I can tell you who prosecuted that because I remember his name now. For the D.A.[,] it was Tom Royals, and he failed to do something. I can’t remember exactly what he failed to do, but the judge dismissed the case.
Q: I believe you said that when you were asked earlier.
A: I didn’t say Mr. Royals’ name, but I just happened to remember who it was.
¶44. During jury selection, defense counsel for the black defendant struck four white veniremembers, including Gray. The State made a Batson challenge. Defense counsel argued that there was no prima facie case for discrimination, but the State responded that defense counsel had struck older white persons who had served on juries. The judge found that a prima facie case of discrimination was made and required Hardison to present race-neutral reasons for striking the four white venire-members. The judge found Hardison’s race-neutral reasons for three of these veniremembers to be sufficient. But as to Gray, the following lengthy discussion occurred between the trial judge and the attorneys:
The Defense: Mr. James Gray ... was the first white person that the defense chose to strike. And our reason was that he was opinionated about the fact that he served on a criminal jury. And he said that Mr. Tom Royals [the prosecutor in an earlier trial that Gray served on as a juror] did something so that they didn’t get to make a decision. And we felt like his opinion was that he was more likely to convict. And his discussion about the service on the jury, his regret not being able to reach a verdict, we felt he was more likely to convict if he sat on a jury. So for his explanations about his past experience, we felt that that was a reason to strike.
The Court: All right. Response by the State.
The State: Your Honor, our response would be that if he seemed indifferent about whether or not he could reach a verdict or not about a past experience, that that would make him exactly what we want, which is someone who is on the middle of the fence, someone who is fair and impartial and cannot-would not make up their mind until they hear what evidence is presented. I don’t recall him saying that he could not be fair and impartial to either side.
The Defense: And Judge, we’re not trying to strike him for cause. We just felt like that’s a race neutral reason that we want to strike [him] and use a peremptory.
The Court: That you wanted to what?
The Defense: We wanted to strike and use a peremptory challenge. We’re not trying to strike for cause.
The Court: Well, I understand. I understand.
The Defense: So we feel like the fact that his — you know, when he elaborated ... about his service ... that that is enough showing for a peremptory challenge.
The Court: He said the judge threw it out.
The Defense: Right. But we just felt like he regretted not being able to deliberate. And [the State] asked if he — if they were serving as the prosecutors at the time, and he said no, it wasn’t you; in other words, like the prosecutor messed it up. And we just felt like he was pro-prosecution from his answers.
The State: I don’t think there was [sic] any questions to that effect, your Honor.
The Court: Still the Court doesn’t understand the basis for the opinion that *1105 you thought he might be prosecution oriented.
The Defense: To us he sounded like he regretted not being able to convict in the case. And when Mr. Doleac [prosecutor] had an exchange with him, whether he and [his co-counsel] were the prosecutors, he said oh, no, it wasn’t you, but he sort of blamed the prosecutor for messing up. Mr. Royals got him off on a technicality. That sounded like pro-prosecution language to us. And for that reason we wanted to strike him. He didn’t get to deliberate. And some of the language seemed, frankly, that he regretted that.
The trial judge stated that he did not understand the defense’s reasoning for excluding Gray, ruled that this was not a “proper or sufficient race-neutral” reason, and kept Gray on the jury.
¶ 45. Ultimately, the trial court accepted three of the State’s peremptory strikes as race-neutral and denied three. The trial court accepted three of Hardison’s peremptory strikes as race-neutral and denied one (Gray). The record reflects that the resulting jury panel consisted of six black jurors and six white jurors; the first alternate juror was black, and the second was white.
ANALYSIS

I. The trial judge’s application of the third prong of Batson was not raised on appeal.

¶ 46. As a preliminary matter, I question whether the purported error on which the plurality reverses — that the trial judge erred by not applying the third prong of Batson — was even raised on appeal. Having reviewed Hardison’s pro se briefs, I am convinced that the matter was never properly raised for review. Accordingly, I would find that the issue is precluded from review by this Court.
¶47. In his pro se brief, Hardison raised the following two issues pertaining to peremptory strikes:
Issue No. 7
The trial court erred when it denied the challenge of Hardison to the peremptory challenges made by the prosecution and allowed by the trial court, in violation of [.Batson ], thus denying to Mr. Hardison his fundamental and constitutional right to a jury of his peers[.]
Issue No. 8
The trial court erred when it sustained the objection of the prosecution [to] the peremptory challenges made by Hardi-son, when it falied [sic] to require the [S]tate to make a prima facie showing of racial discrimination in violation of [.Batson ], thus denying to Mr. Hardison his fundamental and constitutional right to a jury of his peers[.]
(Emphasis added.) Issue Number 7 deals with the State’s peremptory strikes, and Issue Number 8 with Hardison’s peremptory strikes. Gray was peremptorily struck by Hardison. However, Hardison’s contention in Issue Number 8 deals solely with the first prong of Batson, the existence of a prima facie case of discrimination. That subject cannot even be reviewed on appeal since this Court does not know the makeup of the venire. See Birkhead v. State, 57 So.3d 1223, 1230 (Miss.2011) (this Court “cannot override the trial court when this Court does not even know the racial makeup of the venire.”). Nowhere in Hardison’s brief can I discern any argument that the trial judge failed to apply the third prong of Batson, nor that he improperly conflated the second and third prongs. Furthermore, there is no specific mention of Gray or of the peremptory strike against him anywhere in Hardi-son’s briefs.
¶ 48. Under Mississippi Rule of Appellate Procedure 28(a)(3), “[n]o issue not dis *1106 tinctly identified shall be argued by counsel, except upon request of the court[.]” Miss. R.App. P. 28(a)(8). While pro se litigants are afforded some leniency, they “must be held to substantially the same standards of litigation conduct as members of the bar.” Sumrell v. State, 972 So.2d 572, 574 (Miss.2008) (citing Perry v. Andy, 858 So.2d 143, 146 (Miss.2003)). Since Hardison failed to raise the particular Bat-son issue on which the plurality reverses and remands-the trial judge’s alleged failure to find whether the defense’s stated race-neutral reason for striking Gray was a mere pretext — I would find that this issue should not be addressed on appeal. But this being said, alternatively, I now proceed to analyze the issue on its merits.

II. The trial court correctly applied the substance of Batson.

¶49. Batson challenges are analyzed under a three-part test: (1) the party objecting to the peremptory strike must make a prima facie showing that race was the reason for the strike; (2) the burden then shifts to the other party to articulate a race-neutral reason for excluding the juror;[44] and (3) the trial court must determine whether the objecting party has met its burden to prove that the reason was a mere pretext for discrimination.[45] See, ie., Bailey v. State, 78 So.3d 308, 318-20 (Miss.2012) (citations omitted); Pitchford v. State, 45 So.3d 216, 225 (Miss.2010) (citation omitted). This Court has listed sufficient race-neutral reasons for striking veniremembers as including:
[A]ge, demeanor, marital status, single with children, prosecutor distrusted juror, educational background, employment history, criminal record, young and single, friend charged with crime, unemployment with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was late, short term employment.
Davis v. State, 660 So.2d 1228, 1242 (Miss.1995) (citing Lockett v. State, 517 So.2d 1346 (Miss.1987)). The plurality finds, and I agree, that if a prosecutor’s distrust qualifies as a race-neutral reason, then a defendant’s distrust must qualify as well.
¶ 50. This Court has held that:
[o]n appellate review, a trial court’s determinations under Batson are accorded great deference because they are largely based on credibility. McGilberry v. State, 741 So.2d 894, 923 (Miss.1999).... This Court will reverse only when such decisions are clearly erroneous. Woodward v. State, 726 So.2d 524, 530 (Miss.1997); Lockett v. State, 517 So.2d 1346, 1349-50 (Miss.1987).
*1107 Birkhead, 57 So.3d at 1229 (citing Berry v. State, 802 So.2d 1033, 1037 (Miss.2001)). As this Court “cannot override the trial court when this Court does not even know the racial makeup of the venire[,]” which the plurality recognizes is the case here, the analysis proceeds to the second Batson prong — articulating a race-neutral reason. Birkhead, 57 So.3d at 1230. Under the facts presented, I would hold that the trial judge was imprecise but committed no error in his application of Batson.[46]
¶ 51. Regarding the peremptory strike of Gray, the trial judge properly provided the State, the party bringing the Batson challenge, with an opportunity to rebut the race-neutral reason articulated. According to Gray, he had served previously on a jury in a trial in which the prosecution had “failed to do something and the judge threw the case out.” The defense proffered this statement as “regret” that the verdict was not reached and as an indication of a proprosecution bias. The trial judge rejected that contortion of Gray’s statements. In effect, the judge determined that the reason given was pretextual.
¶ 52. Viewing the trial judge’s ruling on the peremptory strike of Gray in context, it is apparent that the judge consistently applied the correct substance of the Bat-son test, and that his sole mistake was in using the wrong labels. The judge consistently and properly allowed the opponents of the peremptory strikes to offer argument that the given race-neutral reasons were mere pretexts, and made his rulings accordingly. In particular, the judge allowed the State an extensive opportunity to rebut the defense’s articulated race-neutral reason (that Gray was proprosecution due to alleged regret he showed at not being allowed to reach a verdict in a previous case). Effectively, the judge found that the purported race-neutral reason was a mere pretext, correctly applying the third prong of Batson. While the language that the trial court used was faulty (“the Court does believe that there was not a proper or sufficient race neutral reason to give as to James Gray. So he will be restored to the panel”), in context, it is clear that the finding was not that no race-neutral reason was articulated, but rather that the articulated reason was a mere pretext.
¶ 53. In a similar case in Tennessee, a defendant, Stout, argued “that the trial court erred by not accepting his proffered race-neutral reasons at face value and then requiring the State to prove purposeful *1108 discrimination.” Stout opined “that the trial court completed only the first two steps of the Batson analysis[.]” State v. Stout, 2000 WL 202226, *8. (Tenn.Crim.App. Feb. 17, 2000) aff'd, 46 S.W.3d 689 (Tenn.2001), superseded by statute on other grounds by State v. Franklin, 308 S.W.3d 799 (Tenn. Apr. 29, 2010). The Tennessee Court of Criminal Appeals noted that it was “reviewing the trial court’s lengthy findings after it heard substantial argument on this issue from both the State and the defendant.” Stout, 2000 WL 202226, at *8. The Tennessee Court of Criminal Appeals held that “despite the imprecise phraseology used by the trial court, the record makes clear that the court engaged in the required in-depth analysis of all the circumstances before reseating [a peremptorily struck venire-member] on the jury, and did not imper-missibly shift the burden of persuasion to the defendant.” Id. I would likewise hold that, in the instant case, where an in-depth analysis occurred before Gray’s reseating and the burden of persuasion was not im-permissibly shifted, but imprecise phraseology was employed by the trial court, the reseating of the venireman was not error.
¶ 54. A further indication that the trial judge properly applied the third prong of Batson is his apparent application of the rule of Robinson v. State, 761 So.2d 209, 210 (Miss.2000), and Hatten v. State, 628 So.2d 294, 298 (Miss.1993), pertaining to the third prong of the Batson analysis. That line of cases mandates that it is necessary for “trial courts [to] make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors.” Hatten, 628 So.2d at 298. In Hatten, we noted that “such a requirement is far from revolutionary, as it has always been the wiser approach for trial courts to follow. Such a procedure, we believe, is in line with the ‘great deference’ customarily afforded a trial court’s determination of such issues.” Id. (citations omitted). In Robinson, this Court reversed the judgment of a trial court which did not make factual findings requested by a defense attorney, who had made the following objection to the State’s purportedly race-neutral reason for a peremptory strike:
Your Honor, we would object to all of those reasons. The law is now clear in Mississippi if they are going to base their strikes on things like sleeping, inattentive, no eye contact, the Court has to make a factual finding that those things are, in fact, true. We would ask the Court to make that determination that [venireman] Mr. Jones was, in fact, sleeping.
Robinson, 761 So.2d at 212.
¶ 55. In the instant case, the trial judge articulated that he would be making the sort of fact-based determinations on the third Batson prong required by the Robinson line of cases. In ruling with regard to venireman Andrew Dent — whom the State peremptorily struck, citing his demeanor at voir dire as its race-neutral reason — the trial judge stated:
[I]t’s the policy of this Court that unless the attorneys call the attention of the Court to a witness who is uninterested or makes a face, or has a bad expression looking at an attorney or turns away from them or something else, body language, folds their arms or whatever, it has to be called to the attention of the Court so that the Court can view them as well and make that determination. So the attorney should come to the bench and make that observation, or send word to the Court. So that’s the Court’s ruling.
When the issue next arose with regard to venirewoman Nellie' Bennett, whom the State also peremptorily struck, citing her demeanor at voir dire, the trial court explicitly articulated that it would be apply *1109 ing the third-Raiscm-prong, fact-based determination required by the line of cases in Robinson, as indicated by the following exchange:
The Defense: Your Honor, we’d like to cite to the Court the case of Jeremiah [Robinson] v. State, 761 So.2d 209, where, quote, the law is now clear in Mississippi if they are going to base their strikes on things like sleeping, inattentive, no eye contact, the Court has to make a factual finding that those things are in fact true. We would ask ... that the Court make a determination that the lady was either sleeping or doing something of that nature that would — being inattentive is not enough under this case.
The Court: Well, the Court has already stated its policy. The Court — you know, folding arms doesn’t necessarily mean somebody is not interested. They just may do that out of habit or to be comfortable or for whatever reason. So that in itself does not necessarily show disinterest in what’s going on. And so the Court thus far has not heard any justifiable race neutral reason for her.
(Emphasis added.) Interestingly, the trial court here linked its finding of a justifiable “race neutral reason,” the requirement of the second Batson prong, to the Robinson rule, which regulates the third prong.
¶ 56. As reflected in the exchanges noted above,[47] the State was allowed extensive rebuttal to the race-neutral reason articulated by the defense for striking Gray and, in essence, called for a fact-based determination from the trial judge, consistent with the Robinson line of cases. Although the defense attorney at one point suggested that its race-neutral reason was based on “the language” of Gray, a natural reading of Gray’s statements does not indicate a proprosecution bias, as the trial judge recognized. The defense appears to have been more concerned about Gray’s tone or attitude, as indicated by the defense statements “he was opinionated,” “we just felt like he regretted,” and “[t]o us it sounded like he regretted.” Tone and attitude fall squarely within the category of race-neutral reasons about which the trial judge is required to make an on-the-record, fact-based determination of the merits under Robinson and Hatten. Robinson, 761 So.2d at 210; Hatten, 628 So.2d at 298.
¶ 57. The deferential standard accorded to the trial court’s Batson determinations is logical. See Birkhead, 57 So.3d at 1229. Matters such as tone and attitude do not translate well into the written record, and it is impossible for this Court to substitute its judgment for that of the trial court with any expectation of accuracy. Here, the trial judge indicated that he did not understand the basis for the defense’s purportedly race-neutral reason for striking Gray and finally made the determination that “there was not a proper or sufficient race-neutral reason to give as to James Gray.” In the lengthy discussion of the peremptory strike against Gray, and the rebuttal thereto, the trial court clearly applied the correct substance, if not the correct labels, of the three-prong Batson test. This is true even though the trial judge imprecisely stated that his final determination related to whether a “sufficient race-neutral reason” has been established.[48] Accord *1110 ingly, I would conclude that this issue is without merit.

III. In the alternative, if any error existed, it was harmless.

¶58. Since I find no error, I would affirm the trial court on the Batson issue. However, even if there were an error, I would find it to be harmless. The plurality does not apply a harmless-error analysis, holding that a trial judge’s erroneous denial of a defendant’s peremptory strike requires automatic reversal. The plurality notes that the Supreme Courts of Iowa, Massachusetts, Minnesota, New York, and Washington have found that a trial judge’s erroneous denial of a defendant’s peremptory strike requires automatic reversal. See State v. Mootz, 808 N.W.2d 207, 225-26 (Iowa 2012); Commonwealth v. Hampton, 457 Mass. 152, 928 N.E.2d 917, 927 (2010); Angus v. State, 695 N.W.2d 109, 118 (Minn.2005); People v. Hecker, 15 N.Y.3d 625, 917 N.Y.S.2d 39, 942 N.E.2d 248, 272 (2010); State v. Vreen, 143 Wash.2d 923, 26 P.3d 236, 238-40 (2001).
¶ 59. I disagree. Whether such errors require automatic reversal in Mississippi appears to be a question of first impression. I do not find the reasoning in the opinions cited above convincing.
¶ 60. As the plurality noted, in Rivera v. Illinois, the United States Supreme Court held that an erroneous denial of a defendant’s peremptory challenge did not require automatic reversal pursuant to the Due Process Clause of the Fourteenth Amendment. Rivera v. Illinois, 556 U.S. 148, 161-62, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009). There, the Court stated that, “[ajbsent a federal constitutional violation, States retain the prerogative to decide whether such errors deprive a tribunal of its lawful authority and thus require automatic reversal.” Rivera, 556 U.S. at 161-62,129 S.Ct. 1446.
¶ 61. I would adopt the standard favored by the Oklahoma Court of Criminal Appeals[49] in Kevin Wayne Robinson v. State of Oklahoma, 255 P.3d 425, 430, 2011 OK CR 15 (Ct.Crim.App.Okla.2011),[50] holding that Batson errors may be reviewed on a case-by-case basis. The Oklahoma court noted that “[tjhere is a strong presumption that errors which occur during trial are subject to harmless error analysis, as long as a defendant is represented by counsel and is tried by an impartial judge.” Oklahoma, 255 P.3d at 428 (citations omitted). See also People v. Bell, 473 Mich. 275, 295, 702 N.W.2d 128, 139 (2005) opinion corrected on reh’g, 474 Mich. 1201, 704 N.W.2d 69 (2005); U.S. v. Patterson, 215 F.3d 776, 780-81 (7th Cir.2000) vacated in part on other grounds, Patterson v. U.S., 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000) (Supreme Court of Michigan and United States Court of Appeals for the Seventh Circuit, respectively, holding that peremptory challenge errors are subject to harmless-error analysis). The opinion further noted that those errors which mandate automatic reversal “appear to have in common the violation of a right granted by the Constitution, rather than a violation of due process by failure to afford a right granted by state statute.” Oklahoma, 255 P.3d at 428.[51] Peremptory strikes have a *1111 statutory basis in Mississippi. See, ie., Miss.Code. Ann. § 99-17-3 (Rev.2007).
¶ 62. In accord with Rivera and Oklahoma, I would hold that errors in granting peremptory strikes are subject to harmless-error analysis in Mississippi. I reiterate that I do not find error in the instant case, but only imprecision that did not have a negative effect on Hardison’s rights. However, even assuming, arguen-do, that the trial judge erred in failing to find explicitly that Hardison’s stated race-neutral reason for striking Gray was a mere pretext, I would find that this error was harmless beyond a reasonable doubt.
CONCLUSION
¶ 63. I agree with the plurality’s speedy-trial analysis. However, since I would affirm the trial court on the Batson issue, the issue on which the plurality reverses and remands for a new trial, I dissent.
RANDOLPH, LAMAR AND PIERCE, JJ., JOIN THIS OPINION.

. The issue under the second prong is "the facial validity of the [proponent's] explanation. Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race neutral.” Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam) (citations omitted). This step "does not demand an explanation that is persuasive, or even plausible.” Id. at 767-68, 115 S.Ct. 1769. Furthermore, "a 'legitimate reason’ is not a reason that makes sense, but a reason that does not deny equal protection.” Id. at 769, 115 S.Ct. 1769 (citation omitted). In Purkett, the prosecutor for the State of Missouri explained that a veniremember was struck because he had long, unkempt hair, a mustache, and a beard. Id. at 766, 115 S.Ct. 1769. The U.S. Supreme Court held that this explanation satisfied the second prong of Batson. Id. at 769-70, 115 S.Ct. 1769.

. Under the third prong of Batson, “the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory [challenge].” McFarland v. State, 707 So.2d 166, 171 (Miss.1997) (citations omitted). "[T]he trial court determines if the reasons given by the prosecution were pretexts for intentional discrimination.” Berry v. State, 802 So.2d 1033, 1040 (Miss.2001) (citation omitted).

. In reviewing the transcript of the voir dire proceedings, the Batson decisions regarding multiple members of the venire reflect that the trial judge consistently utilized the wrong terminology, but the correct process, in addressing Batson challenges. After determining that the objecting party had established a prima facie case of discrimination, which this Court cannot review since we have not been provided with the makeup of the venire, the judge proceeded repeatedly to conflate the second and third prongs of Batson — allowing the party proposing the challenge to allege a race-neutral reason, providing the objecting party with an opportunity for rebuttal, and then determining whether a “sufficient race-neutral reason” had been established. For instance, in summing up his rulings on the State’s peremptory strikes, the judge stated: "in the opinion of the Court there were three of those challenges by the State that were race neutral, and three that were not ... and race neutral reasons not being sufficiently stated in the opinion of the Court as to Patricia Willis, Andrew Dent, and Nellie Bennett. So they will remain on the panel.” The reason the State gave for striking Dent and Bennett was their demeanor during voir dire, which under the precedent of Davis, 660 So.2d at 1242, is indeed a race-neutral reason. So the judge properly considered whether the race-neutral reasons provided were mere pretexts, and concluded that they were. He stated his ruling in the language of the second and not the third prong. Yet, despite the trial judge's imprecise phraseology, the totality of the circumstances indicates that he correctly applied all three prongs of the Batson analysis.

. Supra, ¶¶ 43, 44.

. Nevertheless, I would caution trial judges in the future to carefully differentiate between the latter two prongs of Batson. Purkett established that the second prong (race-neutral reason) has an extremely low threshold — the U.S. Supreme Court held that unless a discriminatory intent is inherent in the explanation, the second prong will be deemed to be met; it need not be persuasive, plausible, or even make sense. Purkett, 514 U.S. at 767-68, 769, 115 S.Ct. 1769. It is only in the third prong of the Batson analysis that persuasiveness becomes relevant. In a future *1110 case that is not as clear cut, a trial judge may risk reversal if he or she does not carefully distinguish between the second and third prongs of his or her Batson analysis.

.The Oklahoma Court of Criminal Appeals is Oklahoma's highest appellate court for criminal matters.

. To distinguish this case from the Jeremiah Robinson case cited above, I will refer to this case as Oklahoma in this opinion.

. Citing faulty jury instruction on reasonable doubt, see Sullivan v. Louisiana, 508 U.S. 275, 282, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182 (1993); intentional racial discrimination in selection of grand jurors, see Vasquez v. Hilary, 474 U.S. 254, 263-64, 106 S.Ct. 617, *1111 623, 88 L.Ed.2d 598 (1986); denial of the right to a public trial, see Waller v. Georgia, 467 U.S. 39, 49, 104 S.Ct. 2210, 2217, 81 L.Ed.2d 31 (1984); denial of the right to self-representation, see McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984); improper exclusion of qualified capital jurors, see Davis v. Georgia, 429 U.S. 122, 123, 97 S.Ct. 399, 400, 50 L.Ed.2d 339 (1976) (per curiam); exposure to improper publicity which wholly denies the defendant an impartial jury, see Sheppard v. Maxwell, 384 U.S. 333, 351-352, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600 (1966); failure to afford a defendant the right to counsel, see Gideon v. Wainwright, 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963); and the lack of an impartial trial judge, see Tumey v. Ohio, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927).