2011 OK CR 15

**Kevin Wayne ROBINSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2009–1168.**

Court of Criminal Appeals of Oklahoma.

April 21, 2011.

Shena Burgess, Megan Henson, Assistant Public Defenders, Tulsa County Public Defender's Office, Tulsa, Oklahoma, attorneys for defendant at trial.

Michelle Keely, Assistant District Attorney, Tulsa County District Attorney's Office, Tulsa, Oklahoma, attorney for State at trial.

Richard Couch, Assistant Public Defender, Tulsa County Public Defender's Office, Tulsa, Oklahoma, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Lori S. Carter, Assistant Attorney General, Oklahoma City, Oklahoma, attorneys for appellee on appeal.

## OPINION

SMITH, Judge.

¶ 1 Kevin Wayne Robinson was tried by jury and convicted of Murder in the First Degree in violation of 21 O.S.2001, § 701.7, in the District Court of Tulsa County, Case No. CF–2008–2277. In accordance with the jury's recommendation the Honorable Kurt Glassco sentenced Robinson to life imprisonment. Robinson must serve 85% of his sentence before he is eligible for consideration for parole. From this judgment and sentence, Appellant appeals, raising four propositions of error.

¶ 2 Robinson argues in Proposition I that his case must be reversed because he was not afforded nine peremptory challenges. Every defendant in a first degree murder case is entitled by statute to nine peremptory challenges. 22 O.S.2001, § 655. The trial court must afford a first degree murder defendant nine peremptory challenges. The failure to do so is a violation of the right to due process. *Golden v. State,* 2006 OK CR 2, ¶ 4, 127 P.3d 1150, 1152. This Court held in *Golden* that this error is structural, affecting the entire trial, and not subject to harmless error review. *Golden,* 2006 OK CR 2, ¶ 18, 127 P.3d at 1155. This Court's decision in *Golden* is clear and unambiguous: failure to afford a defendant nine peremptory chal-

lenges in a trial for first degree murder is structural error. Were this Court to follow the plain language of *Golden*, this case must be reversed and remanded.

¶ 3 However, it is time to reexamine our decision in *Golden*. Peremptory challenges are granted by state statute, not the Oklahoma or federal constitutions. 22 O.S.2001, § 655. The erroneous denial of peremptory challenges is a constitutional error because it deprives a defendant of due process, not because the denial itself violates a constitutional provision. *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988); *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980). It is in this context that we examine the question of structural versus trial error. Most constitutional errors are subject to harmless error analysis. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Trial errors may be assessed along with the evidence presented, to determine whether the error prejudiced the defendant. *Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). Structural errors, by contrast, affect the conduct of the entire trial and cannot be separated from it for purposes of analysis. *Fulminante*, 499 U.S. at 309–10, 111 S.Ct. at 1265. They "undermine the fairness of a criminal proceeding as a whole." *U.S. v. Dominguez Benitez*, 542 U.S. 74, 81, 124 S.Ct. 2333, 2339, 159 L.Ed.2d 157 (2004). We explained in *Golden* that, "Structural errors are those which affect a trial from beginning to end, such as the absence of counsel for a defendant, a biased judge, the unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, and the right to a public trial." *Golden*, 2006 OK CR 2, ¶ 15, 127 P.3d at 1154.

¶ 4 There is a strong presumption that errors which occur during trial are subject to harmless error analysis, as long as a defendant is represented by counsel and is tried by an impartial judge. *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). The United States Supreme Court

has restricted use of structural error, with its requirement of automatic reversal, to "a limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468–69, 117 S.Ct. 1544, 1549–50, 137 L.Ed.2d 718 (1997). These errors appear to have in common the violation of a right granted by the Constitution, rather than a violation of due process by failure to afford a right granted by state statute. Among these are a faulty jury instruction on reasonable doubt, *Sullivan v. Louisiana*, 508 U.S. 275, 282, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182 (1993); intentional racial discrimination in selection of grand jurors, *Vasquez v. Hillery*, 474 U.S. 254, 263–64, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986); denial of the right to a public trial, *Waller v. Georgia*, 467 U.S. 39, 49, 104 S.Ct. 2210, 2217, 81 L.Ed.2d 31 (1984); denial of the right to self-representation, *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984); improper exclusion of qualified capital jurors, *Davis v. Georgia*, 429 U.S. 122, 123, 97 S.Ct. 399, 400, 50 L.Ed.2d 339 (1976) (*per curiam*); exposure to improper publicity which wholly denies the defendant an impartial jury, *Sheppard v. Maxwell*, 384 U.S. 333, 351–352, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600 (1966); failure to afford a defendant the right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963); and the lack of an impartial trial judge, *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927).

¶ 5 The Supreme Court has addressed the issue of whether denial of peremptory challenges is or is not structural error in a series of cases. In *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), the Court discussed the history of the peremptory challenge and noted that denial or impairment of the right was reversible without a showing of prejudice. The Court returned to that discussion in *U.S. v. Martinez–Salazar*, 528 U.S. 304, 317 n. 4, 120 S.Ct. 774, 782 n. 4, 145 L.Ed.2d 792 (2000). The defendant claimed that, under *Swain*, he was not required to show prejudice from the alleged impairment of his right to peremptory challenges. As the Court found his right to peremptory challenges was not impaired,

it declined to address the issue. However, the Court specifically rejected this interpretation of *Swain*, noting that the sentence was both dicta and founded on cases which were decided before the adoption of harmless-error review. *Id.*

¶ 6 Finally, the Supreme Court recently held that state law, not federal law, determines the consequences when a peremptory challenge is erroneously denied. *Rivera v. Illinois*, 556 U.S. 148, 129 S.Ct. 1446, 1450, 173 L.Ed.2d 320 (2009). In *Rivera*, the Illinois Supreme Court had applied state law in concluding that denial of the right to peremptory challenges was not structural error. That court found that the error in Rivera's case was harmless beyond a reasonable doubt. The Supreme Court granted certiorari to resolve the apparent conflict among jurisdictions as to whether the error was structural or subject to harmless error analysis. The Court concluded, "If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern. Rather, it is a matter for the State to address under its own laws." *Rivera*, 129 S.Ct. at 1453. The Court further found that good-faith errors of state law do not always result in federal due process violations. A trial decision which violates state law did not violate due process where there was "no suggestion here that the trial judge repeatedly or deliberately misapplied the law or acted in an arbitrary or irrational manner." *Rivera*, 129 S.Ct. at 1455, citing *Martinez–Salazar*, 528 U.S., at 316, 120 S.Ct. 774; *Ross*, 487 U.S. at 91 n. 5, 108 S.Ct. at 2279–80. Discussing the limited and serious nature of issues which constitute structural error, *Rivera* concludes, "The mistaken denial of a state-provided peremptory challenge does not, at least in the circumstances we confront here, constitute an error of that character." *Rivera*, 129 S.Ct. at 1455.

¶ 7 This Court has not always clearly related the standard under which it reviewed erroneous denial of peremptory challenges. However, in cases previous to *Golden*, this Court consistently applied harmless error analysis in deciding these claims. We twice

referred to this as a "structural" error, but applied harmless error analysis. In *Marrero*, we said that the error was "a structural error that affected the entire trial. This error, *under the facts of this case*, cannot be said to be harmless." *Marrero v. State*, 2001 OK CR 12, ¶ 13, 29 P.3d 580, 582 (emphasis added). In *Spunaugle* we stated that the error "pervaded the entire trial" and was "not subject to harmless error analysis", but also found "facts sufficient to prove prejudice are contained in the record" and discussed the facts which showed the defendant was prejudiced by the error. *Spunaugle v. State*, 1997 OK CR 47, ¶ 32, 946 P.2d 246, 252. Reading *Spunaugle* as a whole, it appears that we applied harmless error analysis and found the error was not harmless under the facts of the case.

¶ 8 In two earlier cases we did not discuss the nature of the error, but simply applied harmless error analysis, requiring the defendant to show prejudice. In *White v. State*, 1986 OK CR 153, ¶ 4, 726 P.2d 905, 907, we found the denial of four peremptory challenges was harmless where no prejudice was shown. *Landrum v. State* is more complex. The voir dire was not transcribed, but the parties agreed that the trial court cut off voir dire after both parties consecutively waived peremptory challenges, without allowing the defendant to exercise his remaining five statutory challenges. We ruled that the error did not require relief because the "defendant has failed to show error coupled with injury, and how he might have been prejudiced thereby." *Landrum v. State*, 1971 OK CR 235, ¶ 18, 486 P.2d 757, 759.

¶ 9 *Golden* cited cases from several other jurisdictions in its general discussion of structural error. Several of these cases did not concern either voir dire issues or, specifically, peremptory challenges. The Supreme Court of Montana has found that the entire jury selection process is structural, securing the defendant's fundamental right to a impartial jury and indelibly affecting the essential fairness of the trial, and not subject to harmless error analysis. *State v. Lamere*, 327 Mont. 115, 112 P.3d 1005, 1013 (2005). The Sixth Circuit, addressing a *Batson* claim, found that the denial of a right to exercise

**430**

peremptory challenges was structural. *U.S. v. McFerron*, 163 F.3d 952, 956 (6th Cir. 1998).[1] The Second Circuit has held that the denial of peremptory challenges arising from a *Batson* claim is structural error, but did not extend that to all denials of peremptory challenges. *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir.1998).

¶ 10 The Court of Special Appeals of Maryland considered this question and found that deprivation of the statutory number of peremptory challenges was not structural error. *Whitney v. State*, 158 Md.App. 519, 857 A.2d 625 (2004). In *Whitney*, defense counsel did not know the defendant was entitled to ten peremptory challenges and did not object when the trial court afforded each party four peremptory challenges. On appeal, Whitney claimed this amounted to ineffective assistance of counsel. Considering the question of prejudice, the Court noted that, generally, Maryland case law held that denial of peremptory challenges was reversible without a showing of prejudice. Without disturbing that rule, the Court found that the error "does not rise to the level of presumptive error or structural defect." *Whitney*, 857 A.2d at 636. The Court found that this error was not so extraordinary as to relieve Whitney of his burden to show he was prejudiced by defense counsel's omission. *Id.*

¶ 11 Several jurisdictions revised their case law after the Supreme Court comment in *Martinez–Salazar*. The Supreme Court of Michigan reversed its earlier cases, holding that denial of peremptory challenges is not structural error, and is subject to harmless error analysis. *People v. Bell*, 473 Mich. 275, 702 N.W.2d 128, 138 (2005). In declining to find the error structural, the Court emphasized that, as peremptory challenges are created by statute, this is a non-constitutional right. *Bell*, 702 N.W.2d at 139. The Seventh Circuit also reversed its earlier rulings, finding that peremptory challenges are subject to harmless error analysis. *U.S. v. Patterson*, 215 F.3d 776, 780–81 (7th Cir.2000), *vacated in part on other grounds, Patterson v. U.S.*, 531 U.S. 1033, 121 S.Ct. 621, 148

L.Ed.2d 531 (2000). The Ninth Circuit originally determined that denial of peremptory challenges was not subject to harmless error analysis, without deciding whether it was structural error. *U.S. v. Annigoni*, 96 F.3d 1132, 1144 (9th Cir.1996). The Ninth Circuit later recognized this was implicitly overruled by *Rivera*.

¶ 12 We now review *Golden* in light of our own previous case law and the Supreme Court's decision in *Rivera*. *Golden* concludes that the trial court's error denied the defendant due process and is thus of constitutional dimensions. *Golden*, 2006 OK CR 2, ¶ 4, 127 P.3d 1150, 1152. *Rivera*, by contrast, holds that a violation of state law, made in good faith, may not constitute a due process violation. *Rivera* also holds that such a violation does not necessarily constitute structural error. In our earlier cases, we looked to the seriousness of the error and its effect on the trial to determine whether the error required relief. The error in *Golden* was egregious and clearly required relief. Given defense counsel's complete lack of opportunity to exercise a significant number of statutory peremptory challenges, we were compelled to conclude that we could not determine what effect the exercise of additional peremptory challenges might have had upon either the jury or the outcome of the case. *Golden*, 2006 OK CR 2, ¶ 19, 127 P.3d at 1155. However, the fact that the denial or impairment of peremptory challenges defied harmless error analysis in *Golden* does not lead to a conclusion that it must do so in every case. Under some circumstances, such as those in *Golden*, this error will require reversal. Under other circumstances, we conclude, it may not. We will review these claims on a case-by-case basis, and determine whether the error is harmless beyond a reasonable doubt. *Chapman*, 386 U.S. 18, 24, 87 S.Ct. 824, 828; *Bartell v. State*, 1994 OK CR 59, ¶ 10, 881 P.2d 92, 95. Our holding in *Golden*, that this is structural error not subject to harmless error review, is overruled.

¶ 13 We turn to the substance of Robinson's claim in Proposition I. The trial

---

1. In *U.S. v. Hall* 152 F.3d 381, 408 (5th Cir. 1998), the Fifth Circuit held that denial of peremptory challenges was structural error. This

conclusion was later found to be abrogated by the Supreme Court's decision in *Martinez–Salazar*.

court did not afford Robinson his nine peremptory challenges. The trial court used the struck method of jury selection. Thirty-four panelists were called and questioned, after which the parties each were to exercise nine peremptory challenges for jurors, and one each for an alternate juror. The remaining panelists comprised the jury and alternates. The record shows that the trial court lost count when taking the parties' peremptory challenges. The Court announced the number of each challenge as it was made, e.g., "That will be State's No. 1." [Trial Tr. III 165] This worked until the parties reached the fourth challenge, where the following exchange occurred:

Court: State's No. 4?

Ms. Keely: Ms. Bridges, 5–A.

Court: Ms. Bridges will be State's No. 5. The defendant?

Ms. Burgess: 11–A, Dulin.

Court: Juror 11, Dulin, will be Defendant's No. 5.

[Trial Tr. III 166] The trial court and all parties proceeded with the remainder of the peremptory challenges for the jury panel, after which each party exercised a challenge for alternates, and two alternate jurors were selected.

¶ 14 After the initial exercise of peremptory challenges the trial court read out the remaining panelists comprising the jury by number, along with two alternates. At this point the parties might have noticed the error in peremptory challenges. After the court read fourteen names, defense counsel asked, "What happened to Baucom and Moore?" The trial court replied, "Oh, I missed those two, didn't I?" [Trial Tr. III 169] Defense counsel said yes, and the court replied that it was at fault. [Trial Tr. III 170] The trial court then re-read the juror list of fourteen names, using a different list. At the end of this list, there were still two extra juror names. The trial court said, "Then that means that we will excuse McBride and Markham, is that correct?" and both parties agreed. [Trial Tr. III 171] This was unfortunate. All parties, and the trial court, could and should have realized that, given the number of jurors called and the number of peremptory challenges to be used, there should have been no extra jurors.

¶ 15 The record reflects that Robinson did not have the opportunity to exercise peremptory challenges against two sitting jurors, and that two potential jurors were excused without having been subject to peremptory challenge. The State concedes that the error occurred, but argues it was harmless. We agree. It is clear that the trial court, acting in good faith, mistakenly counted the number of peremptory challenges remaining, and both parties joined in that good faith mistake. Neither Robison nor the record suggests that the trial court deliberately misapplied the law, or acted irrationally. Robinson does not name any juror he would have excused with the missing peremptory challenges. Nothing in the record suggests, and Robinson does not claim, that any person sitting on Robinson's jury should have or could have been excused for cause. Nothing in the record supports a conclusion that Robinson's jury was anything less than impartial. There is no indication that any sitting juror was biased. Each party had the opportunity to thoroughly *voir dire* the entire venire. Robinson received a fair trial before an impartial and properly instructed jury. *Rivera*, 129 S.Ct. at 1456. The trial court's failure to afford Robinson his full complement of statutorily-required peremptory challenges is harmless beyond a reasonable doubt.

¶ 16 We find in Proposition II that no prosecutorial misconduct deprived Robinson of a fair trial. Robinson claims that the prosecutor improperly questioned jurors during *voir dire*. Robinson failed to object to these questions or comments and we review for plain error. There is none. *Voir dire* allows both sides to gather enough information about prospective jurors to discover grounds for challenges for cause, and to permit the intelligent use of peremptory challenges. *Sanchez v. State*, 2009 OK CR 31, ¶ 44, 223 P.3d 980, 997. The manner and extent of *voir dire* are within the trial court's discretion. *Id.* The prosecutor's questions were appropriate. Robinson first claims that the prosecutor asked jurors questions based on the facts of the case. An attorney should not use voir dire to test prospective jurors'

willingness to accept a party's theory of the case, rather than the jurors' impartiality, *Black v. State*, 2001 OK CR 5, ¶ 19, 21 P.3d 1047, 1058. However, the questions about fighting were appropriate as an attempt to discover whether any jurors had biases on this issue, and did not contradict the laws defining self-defense. Robinson also claims the prosecutor improperly tried to define "reasonable doubt". Prosecutors may not define reasonable doubt. However, they may distinguish that standard from commonly heard phrases, and ask jurors not to hold the State to a higher burden of proof, as the prosecutor did here. *Mack v. State*, 2008 OK CR 23, ¶ 9, 188 P.3d 1284, 1289; *Myers v. State*, 2006 OK CR 12, ¶ 57, 133 P.3d 312, 329. The record does not support Robinson's insistence that jurors were confused by these questions.

¶ 17 We find in Proposition III that sufficient evidence supports Robinson's conviction. To support a conviction for first degree malice murder the State must show that Robinson caused, with deliberate intent, Christianson's unlawful death. 21 O.S.2001, § 701.7. Robinson claimed the homicide was justified because he acted in self-defense. Robinson must show that he killed Christianson while he had reasonable grounds to believe he was in imminent danger of death or great bodily injury from Christianson. 21 O.S.2001, § 733. He presented sufficient evidence of self-defense to raise the claim, and the State was obligated to disprove that defense beyond a reasonable doubt. *McHam v. State*, 2005 OK CR 28, ¶ 10, 126 P.3d 662, 667. The testimony at trial conflicted. This Court will not interfere with a verdict, even where evidence sharply conflicts, if evidence supports the jury's finding of guilt. *Hancock v. State*, 2007 OK CR 9, ¶ 67, 155 P.3d 796, 812. Where evidence conflicts, we must presume on appellate review that the jury resolved any conflicts in favor of the prosecution. *McDaniel v. Brown*, —— U.S. ——, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (2010). Jurors heard the evidence that Robinson believed the victim was armed, that the victim threatened to harm Robinson, and that the victim started the fist fight. Evidence also showed that the victim started to leave Robinson's house, Robinson chased him, Robin-

son put down the knife and dared the victim to fight, and Robinson stabbed the victim after he stopped fighting. Sufficient evidence supports the jury's finding that the State proved, beyond a reasonable doubt, that Robinson did not act in self-defense.

¶ 18 Robinson also claims in Proposition III that the State failed to prove he acted with malice aforethought. Malice may be formed in the instant before the fatal act, and may be established from the fact of the killing alone. *Hancock*, 2007 OK CR 9, ¶ 65, 155 P.3d at 812. Jurors may find intent to kill from circumstantial evidence. *Davis v. State*, 2004 OK CR 36, ¶ 23, 103 P.3d 70, 78. The manner of killing and pattern of wounds may support a finding of intent to kill. *Hogan v. State*, 2006 OK CR 19, ¶ 22, 139 P.3d 907, 919. Evidence showed Robinson chased Christianson down a public street brandishing a knife, engaged in a fight with Christianson, and stabbed him as the fight concluded. The fatal stab wound, to the back of Christianson's neck, was made with enough force to sever his spinal column. Evidence also showed Christianson was unarmed. Taking the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Robinson did not act in self-defense and killed Christianson with malice aforethought. *Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559.

¶ 19 We find in Proposition IV that error in instruction does not require relief. In *Easlick*, this Court discontinued use of the "reasonable hypothesis" test for circumstantial evidence. *Easlick*, 2004 OK CR 21, ¶ 15, 90 P.3d at 559. The corresponding Oklahoma Uniform Jury Instruction on circumstantial evidence, OUJI–CR 2d 9–5, was subsequently modified to reflect this change. The trial court instructed jurors using the language of the old instruction. Jurors were told that the facts necessary to prove guilt must be "consistent with each other and with the conclusion of guilt", and that all the facts and circumstances together must be "inconsistent with any reasonable theory or conclusion of a defendant's innocence." Robinson

failed to object to this instruction, and we review for plain error.

¶ 20 The trial court should have given the current instruction, which accurately reflects the State's burden of proof. However, before we may grant relief for plain error, Robinson must show (a) an error (a deviation from a legal rule), (b) which is plain or obvious, which (c) affected his substantial rights, by affecting the outcome of the proceeding. *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923. Even if all these requirements are met, we will only grant relief "if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice." *Id.* (quotations omitted).

¶ 21 While the incorrect instruction constituted a plain and obvious error, Robinson fails to show it affected his substantial rights. As we noted in *Easlick,* the "reasonable hypothesis" test for circumstantial evidence was based on distrust of circumstantial evidence. *Easlick,* 2004 OK CR 21, ¶ 6, 90 P.3d at 558. Because circumstantial evidence might lend itself to decisions based on speculation or suspicion, the "reasonable hypothesis" test was intended to work to a defendant's benefit. It supplemented, rather than supplanted, the "beyond a reasonable doubt" standard of proof required in all criminal cases. For this reason, its erroneous use here did not prejudice Robinson. Robinson's jury was instructed both that the State must prove his guilt beyond a reasonable doubt, and that in considering the evidence jurors should determine whether the facts supporting guilt were consistent with one another and inconsistent with any reasonable theory of Robinson's innocence. Particularly given Robinson's claim of self-defense, this erroneous instruction benefited Robinson. He cannot show he was prejudiced by the error.

## DECISION

¶ 22 The Judgment and Sentence of the District Court of Tulsa County is **AF-FIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, P.J.: concur.

LEWIS, V.P.J., LUMPKIN and C. JOHNSON, JJ.: specially concur.

LUMPKIN, Judge: SPECIALLY CONCURRING.

¶ 1 I agree with the rationale and result reached in the present case, but write further to explain that the denial of a peremptory challenge is a due process issue.

¶ 2 First, I note that Appellant did not challenge the deprivation of the peremptory challenge before the trial court. As such Appellant has waived appellate review of the instant challenge for all but plain error. *Wackerly v. State,* 2000 OK CR 15, ¶ 7, 12 P.3d 1, 7; *Simpson v. State,* 1994 OK CR 40, ¶ 2, 876 P.2d 690, 692–93. However, this analysis is only applicable because the United States Supreme Court has determined that the loss of a peremptory challenge is a due process issue.

¶ 3 The loss of a peremptory challenge is not of a constitutional dimension. *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). Instead, "[t]he right to exercise peremptory challenges in state court is determined by state law." *Rivera v. Illinois,* 556 U.S. 148, 129 S.Ct. 1446, 1450, 173 L.Ed.2d 320 (2009). States pass statutes defining the proper procedure and the failure to follow this procedure results in a due process analysis. *See Golden v. State,* 2006 OK CR 2, ¶ 6, 127 P.3d 1150, 1156 (Lumpkin, V.P.J., dissenting); *Lisenba v. People of State of California,* 314 U.S. 219, 236–37, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). Not every violation of state law rises to the level of a constitutional due process violation.

"[A] mere error of state law," we have noted, "is not a denial of due process." *Engle v. Isaac,* 456 U.S. 107, 121, n. 21, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (internal quotation marks omitted). *See also Estelle v. McGuire,* 502 U.S. 62, 67, 72–73, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Due Process Clause, our decisions instruct, safeguards not the meticulous observance of state procedural prescriptions, but "the

fundamental elements of fairness in a criminal trial." *Spencer v. Texas*, 385 U.S. 554, 563–564, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

*Rivera*, 556 U.S. at ——, 129 S.Ct. at 1454. At bottom, the Due Process Clause requires a fundamentally fair trial. *Bracy v. Gramley*, 520 U.S. 899, 904–05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997).

¶ 4 A majority of this Court determined in *Golden v. State*, 2006 OK CR 2, ¶¶ 13–19, 127 P.3d 1150, 1153–54, that a denial of the complete array of peremptory challenges to which a defendant is entitled to under Oklahoma law constitutes structural error which may not be deemed harmless error. Since *Golden*, the United States Supreme Court has determined that the erroneous denial of a peremptory challenge does not require automatic reversal of a defendant's conviction as a matter of federal law. *Rivera*, 556 U.S. at ——, 129 S.Ct. at 1452–53. *Golden* was decided on federal Constitutional grounds and not an independent state law basis. *Golden*, 2006 OK CR 2, ¶¶ 14–15, 127 P.3d at 1153–54. Therefore, *Rivera* mandates the overruling of *Golden*. *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983) (holding that state courts are free and unfettered to interpret their state constitutions however the United States Supreme Court's determinations of federal constitutional questions is controlling).

¶ 5 Turning to our analysis of due process in jury formation, the key question is: "was the jury as finally composed fair and impartial and no member removable for cause." *See Rivera*, 556 U.S. at ——, 129 S.Ct. at 1453–54; *Ross*, 487 U.S. at 89, 108 S.Ct. at 2279 ("If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern."); *Grant v. State*, 2009 OK CR 11, ¶ 22, 205 P.3d 1, 12; *Rojem v. State*, 2006 OK CR 7, ¶¶ 36–37, 130 P.3d 287, 295; *Harris v. State*, 2004 OK CR 1, ¶¶ 13–14, 84 P.3d 731, 741; *Ross v. State*, 1986 OK CR 49, ¶ 11, 717 P.2d 117, 120. As the jury in the present

case was fair and impartial no due process violation has been shown.

¶ 6 As no constitutional error occurred we turn to state law to determine the effect of the error. "Just as state law controls the existence and exercise of peremptory challenges, so state law determines the consequences of an erroneous denial of such a challenge." *Rivera*, 556 U.S. at ——, 129 S.Ct. at 1450. The erroneous deprivation of the peremptory challenge is harmless. 20 O.S.2001, § 3001.1.

¶ 1 Further, in relation to Proposition IV, I note that in *Harmon v. State*, 2011 OK CR 6, ¶ 55–57, 248 P.3d 918, 938, this Court finally settled the reasonable hypothesis argument and directed the Oklahoma Uniform Instruction Committee (Criminal) to correct the instructions regarding proof of aggravating circumstances just as it had for the rest of our sufficiency of the evidence analysis in *Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559.

C. JOHNSON, Judge: SPECIALLY CONCURRING.

¶ 1 I agree with the result reached by the Court in this case. The Court is proper in revisiting *Golden v. State*, 2006 OK CR 2, 127 P.3d 1150, wherein my opinion held that the error was "structural error" and reversal was required.

¶ 2 The recent U.S. Supreme Court case of *Rivera v. Illinois*, 556 U.S. 148, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009), indicated that state courts could look to basically a harmless error analysis as to the problem with the challenges and "structural error." I agree with the Court in this case that the error could be harmless. There is no question that all parties agreed and it is not the egregious problem that we had in *Golden*.

¶ 3 I still have a firm belief that the right of an Appellant to have the proper number of peremptory challenges goes to the heart of a defendant's due process rights. Again, the Court should look at this on a case by case basis, but my belief still is that this is a fundamental right and must be protected. I

am authorized to state that Judge David Lewis joins in this writing.