MOORE v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MOORE v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MOORE v. STATE
2019 OK CR 12
Case Number: F-2017-710
Decided: 06/13/2019
ALEX MOORE, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2019 OK CR 12, __ __

 

 




ORDER GRANTING APPELLEE'S MOTION TO PUBLISH, 
WITHDRAWING PRIOR OPINION AND SUBSTITUTING 
ATTACHED OPINION


¶1 On March 28, 2019, this Court affirmed Appellant's conviction and sentence on direct appeal in an unpublished opinion. On April 12, 2019, the State of Oklahoma filed with this Court a Motion for Publication and Brief in Support. In this motion, the State urges that publication of our opinion in this case is warranted on various grounds. Upon review of that request and the opinion, and for good cause shown, we find that the State of Oklahoma's Motion for Publication and Brief in Support should be and hereby is GRANTED.

¶2 IT IS THEREFORE THE ORDER OF THIS COURT that the prior opinion in the above styled case is WITHDRAWN. The Clerk of this Court is hereby directed to designate the attached opinion as "FOR PUBLICATION."

¶3 The Clerk of this Court is directed to transmit a copy of this Order and the attached Opinion to the Court Clerk of Beckham County; the District Court of Beckham County, the Honorable Doug Haught, District Judge; and counsel of record.

¶4 IT IS SO ORDERED.

¶5 WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 13th day of June, 2019.


/s/DAVID B. LEWIS, Presiding Judge

/s/DANA KUEHN, Vice-Presiding Judge

/s/GARY L. LUMPKIN, Judge

/s/ROBERT L. HUDSON, Judge

/s/SCOTT ROWLAND, Judge



ATTEST:
/s/John D. Hadden
Clerk



 


 

 

O P I N I O N



HUDSON, JUDGE:


¶1 Appellant, Alex Moore, was tried and convicted at a jury trial in Beckham County District Court, Case No. CF-2015-9, of Murder in the First Degree, in violation of 21 O.S.Supp.2012, § 701.7(A). The jury recommended a sentence of life imprisonment without the possibility of parole. The Honorable Doug Haught, District Judge, presided at trial, and sentenced Moore in accordance with the jury's verdict. Moore now appeals.

FACTS

¶2 The State's evidence showed that Appellant attacked and killed his cellmate, Todd Bush, on the evening of March 6, 2014. Appellant and Bush were inmates from California incarcerated at the privately-run Northfork Correctional Center in Sayre.[1] Appellant and Bush were under lockdown in Cell 261 of the Fox South Unit at approximately 7:45 p.m. when Christopher Hill, a corrections counselor, stopped by to verify their respective account balances. Hill did not unlock the cell door during this process although he had a key. Instead, he knocked on the cell door and spoke with each inmate through the window. Bush was laying on the bottom bunk bed when Hill read Bush's account balance. Bush did not get up but responded with a simple "okay." Appellant was laying on the top bunk, reading a book when Hill asked whether he wanted his balance. Appellant hopped down off his bunk, walked to the door and Hill read his account balance. Appellant said "okay" and returned to the top bunk where he resumed reading. Appellant and Bush were the only two inmates inside the cell.

¶3 Before walking away from Cell 261, Hill tugged at the handle of the cell door to confirm it was locked. Then Hill moved down the line to the other cells, repeating the process of balance checks with the other inmates. At approximately 8:00 p.m., Hill finished his shift and had just walked outside the Fox South Unit when an emergency medical call for Appellant's and Bush's cell was broadcast. Robert Hubbard, a correctional officer, was conducting a lockdown of the inmates on the bottom row of the Fox South Unit when someone yelled about an inmate down on the top tier.

¶4 Hubbard raced upstairs to Cell 261. There, he observed through the window of the locked cell door Appellant holding onto Bush. Both inmates were on the floor with Appellant's legs folded underneath him; Bush was on his knees. Appellant had his arms wrapped around Bush and was doing something to Bush's chest. According to Hubbard, Appellant was "[k]ind of like shaking" Bush's chest. No other inmates were inside the cell. Hubbard called over the radio for medical assistance then unlocked the cell with his key and went inside. Hubbard quickly determined that Bush had no pulse and that his condition was not good. Hubbard conveyed this information over the radio, laid Bush's body flat on the floor and began CPR while waiting for the medical team to arrive.

¶5 Hill arrived to find Hubbard inside Cell 261 performing CPR on Bush. Hill ushered Appellant away from the cell and told him to sit on a bench in the common area. Hill then relieved Hubbard and commenced CPR on Bush. The prison's medical team soon arrived. Bush was loaded onto a gurney and transported to a local hospital by ambulance. Bush was in full cardiac arrest and never responded to the continuous efforts of the prison medical staff, paramedics and emergency room personnel to save his life. Bush was pronounced dead at the hospital.

¶6 When asked by Northfork officials what happened to Bush, Appellant said he didn't know. Appellant explained that Bush "liked to drink" and had fallen off his bunk bed. Appellant offered too that he and Bush were from the same neighborhood. Bruising and abrasions were observed on Bush's face, neck and upper chest by investigators and medical personnel that were inconsistent with falling roughly two feet off the lower bunk bed. A small laceration was observed at the base of Bush's neck and an abrasion was apparent on Bush's left rib cage where the skin had rubbed off. Petechial hemorrhaging was observed in both of Bush's eyelids. These injuries suggested to investigators evidence of attack, struggle and asphyxia. By contrast, two small scratches were observed on Appellant's neck.

¶7 Inside Cell 261, investigators found utter disarray. Spilt "hooch" or contraband prison alcohol (commonly made from fermented food like bread, fruit and sugar) was spilt on the floor along with one of Bush's overturned tennis shoes. In the corner of the cell near a mounted table and chairs was an overturned cup and wet towel. Passive blood drips were found in this same area suggesting the source was directly above the blood drops. Blood swipes were observed on the cell wall that were consistent with someone trying to get up off the ground.

¶8 Dr. Ruth Kohlmeier, the state medical examiner, autopsied Bush and determined that the manner of death was homicide with the cause of death being asphyxiation due to strangulation. Her external examination revealed bruising on Bush's hands, forearm and chest area. Bush also had an abrasion on his left chest. Bush had bruises on his nose, above his left eyebrow and on his right eyebrow; he also had a black left eye. These injuries were fresh and were inflicted during the same time frame. Dr. Kohlmeier opined that these injuries were consistent with Bush receiving multiple blows to the head and were not consistent with Bush having fallen down.

¶9 Dr. Kohlmeier's internal examination revealed that Bush's brain had swollen but there was no blood on the brain. The absence of blood on the brain meant Bush's head injuries were not lethal. Bush had petechial hemorrhages in both eyes, along with injuries to his neck, which were consistent with strangulation. Indeed, Bush's hyoid bone inside his neck was fractured which, according to Dr. Kohlmeier, would take "tremendous force" to break in a younger person like Bush. Toxicology of Bush's blood showed he was intoxicated: his blood alcohol level was positive for alcohol at 0.18 percent.

¶10 The defense presented no evidence at trial and rested at the conclusion of the State's case. However, the defense theory at trial--advanced both through cross-examination and closing argument--was that the victim's death may have been caused by an accidental fall, consistent with Appellant's statement to prison officials.

ANALYSIS

¶11 Proposition I. The trial court admitted evidence under 12 O.S.2011, § 2404(B)[2] showing that Appellant attacked an inmate and a detention officer in separate incidents occurring at the county jail while Appellant awaited trial in the present case. The first incident occurred on January 9, 2016 when, according to detention officer Chris Yeager, Appellant "balled up" his fists and struck his cellmate, Kevin Ezzell, on the back of the head inside their cell. This incident occurred after Yeager opened the cell door and responded to Ezzell's request for bedding. Appellant and Ezzell were the only two inmates inside the cell. Yeager testified that Appellant "was getting his hands up close to [Ezzell's] neck and shoulder region" while standing behind Ezzell. Yeager intervened and separated the two as Ezzell attempted to run out the open cell door. Yeager testified that Appellant's hands weren't coming off of Ezzell's neck and shoulder area, prompting him to pull Appellant off Ezzell. Appellant later said to the detention officer "tell that dude that I did him a favor because I could have waited 'til y'all did meds and killed him."

¶12 The second incident occurred on February 18, 2016, as detention officer Jason Crook was passing out medications in Appellant's pod. Appellant attempted to walk out of the pod to confront a jail captain about that morning's oatmeal rations when he was stopped by another detention officer. Appellant then knocked off a stack of trays from the medication cart, pushed the cart out of the way and walked towards a hallway door. When Crook stepped around the medicine cart, Appellant came at the officer and put his hands on Crook's "head and shoulder area." Crook and Appellant then fell to the ground. Crook was able to subdue Appellant despite Appellant having both hands on Crook's face with his thumbs going forward into the officer's eyes. When Crook knocked Appellant's hands away, Appellant grabbed the back of the officer's shirt.

¶13 The trial court admitted this evidence under Section 2404(B) as proof showing absence of mistake or accident. The trial court included in the written charge the uniform Oklahoma limiting instruction for other crimes or bad acts evidence.[3] On appeal, Appellant argues the trial court abused its discretion by admitting this evidence. Appellant urges this error denied him due process and was not harmless. Appellant requests either a new trial or modification of his sentence.

¶14 At trial, Appellant timely objected to this evidence on the grounds raised here thus preserving this claim for our review. We review the admission of other crimes or bad acts evidence for abuse of discretion. Kirkwood v. State, 2018 OK CR 9, ¶ 3, 421 P.3d 314, 316. An abuse of discretion is a conclusion or judgment that is clearly against the logic and effect of the facts presented. Id. We have held that any criminal conviction obtained through a trial "must be based upon evidence establishing that the defendant committed the charged crime(s), rather than evidence of other offenses." Miller v. State, 2013 OK CR 11, ¶ 89, 313 P.3d 934, 966.

¶15 Section 2404(B) governs the admission of other crimes or bad acts evidence. This provision "specifically prohibits evidence intended to prove a character trait of a person in order to show the person acted in conformity with that trait." Cuesta-Rodriquez v. State, 2010 OK CR 23, ¶ 26, 241 P.3d 214, 226. Other crimes or bad acts evidence is admissible, however, for limited purposes such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. We recently discussed the requirements for the admission of this type of evidence:

Evidence of other crimes must be (a) probative of a disputed issue of the charged crime; (b) there must be a visible connection between the crimes; (c) the evidence must be necessary to support the State's burden of proof; (d) proof of the evidence must be clear and convincing; (e) the probative value of the evidence must outweigh its prejudicial effect; and (f) the trial court must instruct jurors on the limited use of the testimony at the time it is given and during final instructions.

Kirkwood, 2018 OK CR 9, ¶ 5, 421 P.3d at 316 (citation omitted).

¶16 The principal issue at trial was whether Appellant killed Bush with malice aforethought or whether the victim died from an accidental fall. When asked what happened, Appellant told prison officials that Bush "liked to drink" and had fallen off his bunk bed. Defense counsel's cross-examination of the State's witnesses, like his closing argument, advanced the defense that Appellant's version of events was possible despite the considerable evidence showing Bush was beaten and strangled. Thus, the issue of Appellant's intent was squarely before the jury as was the defense's attempt to show reasonable doubt by defending the case with the notion that the victim's death was an accident.

¶17 Evidence that a defendant committed acts similar to the charged offense may be admissible at trial to prove absence of mistake or accident. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.2011, § 2401. The probative nature of the other crimes evidence offered in this case depends upon the similarity of the conduct involved. As recently explained by another court in addressing this issue:

The use of a defendant's other misconduct to prove lack of accident is premised upon Wigmore's theory of improbability. 1 E. Imwinkelried, Uncharged Misconduct Evidence § 5:11 (Updated 2017) (citing 2 Wigmore, Evidence § 363 (3rd ed.)). See also 22B Fed. Prac. & Proc. Evid. § 5255. Under the theory of improbability, which is also known as the doctrine of chances, "the credibility of the accident explanation decreases as the number of instances of similar conduct increases." Imwinkelried § 5:11. Stated another way, "the more often an accidental or unusual event occurs, the more likely it is that any subsequent reoccurrence is not the result of a mistake or accident." R. Larsen, Navigating a Federal Trial 10:53.

Swett v. State, 2018 WY 144, ¶ 25, 431 P.3d 1135, 1143.

¶18 We have approved of the use of other crimes or bad acts evidence to prove absence of mistake or accident in this way even where different victims are involved. See Kirkwood, 2018 OK CR 9, ¶¶ 4-9, 421 P.3d at 316-18 (evidence of a violent domestic incident that occurred between the defendant and the child victim's mother eight months after the charged offense admissible to counter defendant's claim of accident or mistake in child abuse by injury case); Cole v. State, 2007 OK CR 27, ¶¶ 12-26, 164 P.3d 1089, 1094-96 (evidence that defendant was convicted in California eighteen years earlier of aggravated child abuse of his six month old son admissible to disprove absence of mistake of accident in the child abuse murder of his nine month old daughter); Welch v. State, 2000 OK CR 8, ¶¶ 7, 13, 2 P.3d 356, 365, 367 (evidence that defendant murdered Debra Stevens in Grady County three months after Talley Cooper's death in Cleveland County was admissible to prove absence of mistake or accident with respect to Cooper's death). Such evidence is not offered to show a defendant's propensity for violence and the defendant's action in conformity therewith. Rather, it is offered for the limited purpose of proving absence of mistake or accident as authorized under the express terms of Section 2404(B).

¶19 In the present case, evidence of Appellant's separate jail altercations occurring after Bush's killing was relevant to prove absence of mistake or accident as to the charged offense. The January 9, 2016, incident is highly similar to the charged offense. The record shows Appellant attacked his cellmate by punching him in the back of the head and grabbing his cellmate around the throat and shoulders. This attack occurred inside the jail cell both men shared. The February 18, 2016, incident is somewhat different from the charged offense but nonetheless similar enough to be admissible. During this second incident, Appellant attacked a detention officer outside his cell, put his hands on the officer's head and shoulder area and both men ended up on the floor before Appellant was subdued.

¶20 The setting and nature of the attacks for these two incidents are highly similar to the circumstances surrounding the charged offense. Although Appellant's subsequent victims were not fatally injured, all three incidents reveal similar attacks in which Appellant confronted a cellmate or detention officer. The repeated commission by Appellant of similar attacks was directly probative of the credibility of his claim that Bush's death was accidental. That is particularly so where, as here, Appellant expressly stated that he could have killed Ezzell, the victim of the January 9th attack, had he waited until the jail staff was handing out medication.

¶21 Despite Appellant's contrary assertions, the similarities of the charged offense and Appellant's attack against Ezzell and the detention officer were substantial enough to create a visible connection between all three. The other crimes evidence introduced in this case was highly probative of a material issue in the present case and was necessary to the State's burden of proof, in particular, refuting the defense claim at trial (based on Appellant's own words) that Bush's death could have been an accident. See Welch, 2000 OK CR 8, ¶ 13, 2 P.3d at 367. "In dealing with the relevancy of evidence, we begin with the presumption that in determining whether to admit such evidence, the trial judge should lean in favor of admission." Id., 2000 OK CR 8, ¶ 14, 2 P.3d at 367 (internal quotation omitted). "When balancing the relevancy of evidence against its prejudicial effect, the trial court should give the evidence its maximum probative force and its minimum reasonable prejudicial value." Id.

¶22 In the present case, the State bore the burden of proving that Appellant intentionally killed Bush. The challenged evidence tends to refute Appellant's claim that Bush's death was accidental and bolstered the State's considerable evidence showing malice aforethought. Despite its highly prejudicial nature, we find that the probative value of the other crimes evidence introduced in this case outweighed its prejudicial effect; that the evidence was necessary to the State's burden of proof; and the evidence was properly admitted. There thus was no abuse of discretion. Proposition I is denied.

¶23 Proposition II. Appellant complains that the trial court erred in admitting "excessively gruesome photographs which depict the medical examiner's handiwork." Specifically, Appellant challenges the admission of State's Exhibits 116, 117, 118, 129, 130 and 131. Appellant complains that these photographs, which depict various internal injuries suffered by the victim, were at best minimally relevant and that their probative value was outweighed by the danger of unfair prejudice.

¶24 Appellant concedes that he did not object at trial to the admission of these photographs. He has therefore waived review of this claim for all but plain error. See Tryon v. State, 2018 OK CR 20, ¶ 59, 423 P.3d 617, 636-37, cert. denied, ___U.S.___, 139 S. Ct. 1176, 203 L. Ed. 2d 215 (2019). To show plain error, Appellant must show an actual error, which is plain or obvious, affected his substantial rights. This Court will only correct plain error if the error seriously affected the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Lamar v. State, 2018 OK CR 8, ¶ 40, 419 P.3d 283, 294; 20 O.S.2011, § 3001.1.

¶25 Appellant fails to show actual or obvious error. We review the trial court's admission of photographic evidence for an abuse of discretion. Photographic exhibits are subject to the same relevancy and unfair prejudice analysis as any other piece of evidence. 12 O.S.2011, §§ 2401-2403. As we have held:

Photographs may be probative of the nature and location of wounds; may corroborate the testimony of witnesses, including the medical examiner; and may show the nature of the crime scene. Gruesome crimes make for gruesome photographs, but the issue is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or needless presentation of cumulative evidence.

Martinez v. State, 2016 OK CR 3, ¶ 46, 371 P.3d 1100, 1112-13, (internal citations omitted).

¶26 State's Exhibits 116 and 117 showed Bush's exposed skull and the bruising underneath the hematoma observed externally on the left forehead which was discussed in the medical examiner's testimony. State's Exhibit 118 showed the victim's exposed brain. The medical examiner testified this photograph showed that the victim's brain was somewhat swollen. Further, the medical examiner observed with this photograph that there was no blood on the brain, signifying the blows to the head Bush received were nonfatal. These challenged photographs depicted the victim's injuries, illustrated the testimony of the medical examiner, and demonstrated the nonfatal nature of Bush's head injuries. This was particularly important because of the defense claim that the victim's death may have been accidental from a fall off the bed.

¶27 State's Exhibits 129, 130 and 131 showed the victim's internal neck organ after being removed by the medical examiner. State's Exhibit 129 is an overview of the internal neck organ. State's Exhibits 130 and 131 are close-up photographs showing the broken hyoid bone and the hemorrhage associated with that injury. The medical examiner acknowledged that the neck organ looked like a "red blob" in the overview picture. She used the two close-up shots of the broken hyoid bone and the related hemorrhage, as pointed out by the forceps shown therein, to identify the location of this injury. This helped illustrate the medical examiner's conclusion that the victim died of asphyxia and that it would take a "tremendous amount of force" to break Bush's hyoid bone.

¶28 There is no question that some of these photographs were gruesome. But this alone does not make them inadmissible "so long as they are not so unnecessarily hideous or repulsive that jurors cannot view them impartially." Bosse v. State, 2017 OK CR 10, ¶ 48, 400 P.3d 834, 853. None of the challenged photographs can be described as unnecessarily hideous or repulsive. The challenged photographs were relevant and properly admitted. These photographs were not unfairly prejudicial when considered both individually and collectively. Nor were they cumulative. "[T]he State was not required to downplay the violence involved or its repercussions." Jones v. State, 2009 OK CR 1, ¶ 57, 201 P.3d 869, 885. There is no actual or obvious error. Proposition II is denied.

¶29 Proposition III. Appellant complains that the prosecutor improperly defined "reasonable doubt" during voir dire. Appellant failed to object to any of the questions and comments he now challenges on appeal. Our review is thus limited to plain error. Robinson v. State, 2011 OK CR 15, ¶ 16, 255 P.3d 425, 431. Appellant fails to show actual or obvious error.

¶30 In the challenged passages, the prosecutor addressed with the venire panel whether they agreed that not all doubt was reasonable. During this discussion, the prosecutor mentioned the example of an oncoming car on a two-way highway and whether it was reasonable to pull off the road because the prospective juror may have doubt that the oncoming car would cross the center line. The consensus view was (unsurprisingly) that it was unreasonable to pull off the highway for an oncoming car on the mere chance it might cross the centerline. At one point, the prosecutor asked a prospective juror whether he agreed that beyond a reasonable doubt should not be equated to "beyond a shadow of a doubt" or "beyond all doubt" to which the prospective juror responded "[y]eah".

¶31 "The manner and extent of examination of jurors is not 'prescribed by any definite, unyielding rule, but instead rests in the sound discretion of the trial judge.'" Tryon, 2018 OK CR 20, ¶ 13, 423 P.3d at 627 (quoting Mayes v. State, 1994 OK CR 44, ¶ 15, 887 P.2d 1288, 1298). Here, the prosecutor's questions were well within the limits of proper voir dire. We have held that prosecutors may not define "reasonable doubt," Robinson, 2011 OK CR 15, ¶ 16, 255 P.3d at 432, but that is not what happened in this case. The State "may distinguish that standard from commonly heard phrases, and ask jurors not to hold the State to a higher burden of proof, as the prosecutor did here." Id. The prosecutor used the example of the passing car to illustrate the well-established principle that not all doubt is reasonable. Appellant's jury was not left with an erroneous impression and the prosecutor's actions did not represent actual or obvious error. See, e.g., Phillips v. State, 1999 OK CR 38, ¶¶ 21-23, 989 P.2d 1017, 1028; Stewart v. State, 1988 OK CR 108, ¶ 21, 757 P.2d 388, 396. Because Appellant fails to show actual or obvious error, there is no plain error. Proposition III is denied.

¶32 Proposition IV. Appellant complains there is nothing in the record to indicate he was advised, either by the trial court or by his own counsel, of his right to testify or that he wished to waive that right. Thus, Appellant complains that his constitutional right to testify in his own behalf has been violated. Appellant requests that we reverse his murder conviction and remand his case for a new trial.

¶33 This issue was not raised below. Our review is therefore limited to plain error. See Wackerly v. State, 2000 OK CR 15, ¶ 29, 12 P.3d 1, 12. Appellant fails to show actual or obvious error. He acknowledges that we have never imposed a formal requirement that the defendant's waiver of his right to testify be made on the record at trial. Although it is undoubtedly true that non-testifying defendants commonly make such waivers on the record, Appellant cites no authority requiring it. Indeed, the Tenth Circuit has held that:

[N]othing in this circuit, or any other . . . requires defendants to waive their right to testify on the record and we decline to adopt such a rule now. To the contrary, requiring judges to question each non-testifying defendant about his decision not to testify may result in defendants feeling pressured to give up their right not to testify.

Cannon v. Trammell, 796 F.3d 1256, 1273 n.9 (10th Cir. 2015) (citing United States v. Pennycooke, 65 F.3d 9, 13 (3d Cir. 1995)).

¶34 Nothing in the present record indicates that defense counsel frustrated Appellant's desire to testify. Nor does the record suggest in any way that Appellant wanted to testify. We decline Appellant's invitation to create new law and adopt a formal requirement that the trial court in every case advise defendants of their right to testify and obtain an on-the-record waiver of such right from non-testifying defendants. However, trial judges should exercise extreme caution when a defendant's counsel announces during a trial proceeding that their client does not wish to testify. The best practice unquestionably is to take the time to swear in the defendant on the record and outside the presence of the jury and ask simple questions regarding their choice not to testify in their own behalf. The time it takes to do so is a small price to pay for a clean and complete record.

¶35 In the present case, there is no actual or obvious error in light of controlling authority. Thus, there is no plain error. Proposition IV is denied.

¶36 Proposition V. Appellant complains that trial counsel was ineffective for failing to object to 1) the photographic exhibits challenged in Proposition II; and 2) the prosecutor's questions and comments during voir dire challenged in Proposition III. To prevail on an ineffective assistance of counsel claim, the appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). See Harrington v. Richter, 562 U.S. 86, 104, 131 S. Ct. 770, 787-88, 178 L. Ed. 2d 624 (2011) (discussing Strickland, supra). We previously rejected Appellant's challenges both to the photographic exhibits as discussed in Proposition II and the prosecutor's voir dire as discussed in Proposition III. Trial counsel thus was not ineffective for failing to make these meritless objections. Jackson v. State, 2016 OK CR 5, ¶ 13, 371 P.3d 1120, 1123. Proposition V is denied.

¶37 Proposition VI. Finally, Appellant complains that relief is warranted based on cumulative error. We have held that a cumulative error argument has no merit when the Court fails to sustain any of the other errors raised by Appellant. Bivens v. State, 2018 OK CR 33, ¶ 35, 431 P.3d 985, 996. Such is the case here. Proposition VI is denied.

DECISION

¶38 The Judgment and Sentence of the District Court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2019), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF BECKHAM COUNTY
THE HONORABLE DOUG HAUGHT, DISTRICT JUDGE


 
 
 
 APPEARANCES AT TRIAL
 
 
 APPEARANCES ON APPEAL
 
 
 
  
  
 
 
 
 RICHARD L. YOHN
 ROBERT S. KEITH
 OKLA. INDIGENT DEFENSE
 SYSTEM
 P.O. BOX 1494
 CLINTON, OK 73601
 COUNSEL FOR DEFENDANT
 
 
 JAMES H. LOCKARD
 OKLA. INDIGENT DEFENSE
 SYSTEM
 P.O. BOX 926
 NORMAN, OK 73070-0926
 COUNSEL FOR APPELLANT
 
 
 
  
  
 
 
 
 DANA HADA
 MICHAEL A. ABEL
 ASST. DISTRICT ATTORNEYS
 BECKHAM COUNTY
 P.O. BOX 507
 SAYRE, OK 73662
 COUNSEL FOR THE STATE
 
 
 MIKE HUNTER
 ATTORNEY GENERAL OF
 OKLAHOMA
 DONALD D. SELF
 ASST. ATTORNEY GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 


 


OPINION BY: HUDSON, J.
LEWIS, P.J.: CONCUR 
KUEHN, V.P.J.: CONCUR 
LUMPKIN, J.: CONCUR 
ROWLAND, J.: CONCUR 



FOOTNOTES


[1] At the time of this incident, Northfork was corporately owned and operated exclusively under a contract with the California Department of Corrections to house inmates. The record shows that Northfork was later acquired by the Oklahoma Department of Corrections and is currently a state-operated prison.



[2] Title 12 O.S.2011, § 2404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.



[3] Instruction No. 22 stated:

Evidence has been received that the defendant has allegedly committed misconduct other than that charged in the information. You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offense charged in the information. This evidence has been received solely on the issue of the defendant's alleged absence of mistake or accident. This evidence is to be considered by you only for the limited purpose for which it was received.

See OUJI-CR (2d) 9-9 (2000 Supp.).

 

 










 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1988 OK CR 108, 757 P.2d 388, STEWART v. STATE
Discussed
 1994 OK CR 44, 887 P.2d 1288, MAYES v. STATE
Discussed
 2007 OK CR 27, 164 P.3d 1089, COLE v. STATE
Discussed
 2009 OK CR 1, 201 P.3d 869, JONES v. STATE
Discussed
 2010 OK CR 23, 241 P.3d 214, CUESTA-RODRIGUEZ v. STATE
Discussed
 2011 OK CR 15, 255 P.3d 425, ROBINSON v. STATE
Discussed at Length
 2013 OK CR 11, 313 P.3d 934, MILLER v. STATE
Discussed
 2016 OK CR 3, 371 P.3d 1100, MARTINEZ v. STATE
Discussed
 2016 OK CR 5, 371 P.3d 1120, JACKSON v. STATE
Discussed
 2017 OK CR 10, 400 P.3d 834, BOSSE v. STATE
Discussed
 2018 OK CR 8, 419 P.3d 283, LAMAR v. STATE
Discussed
 2018 OK CR 9, 421 P.3d 314, KIRKWOOD v. STATE
Discussed at Length
 2018 OK CR 20, 423 P.3d 617, TRYON v. STATE
Discussed at Length
 2018 OK CR 33, 431 P.3d 985, BIVENS v. STATE
Discussed
 2000 OK CR 8, 2 P.3d 356, 71 OBJ 989, Welch v. State
Discussed at Length
 1999 OK CR 38, 989 P.2d 1017, Phillips v. State
Discussed
 2000 OK CR 15, 12 P.3d 1, 71 OBJ 2132, Wackerly v. State
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2401, Relevant Evidence Defined
Cited
 12 O.S. 2404, Character Evidence Not Admissible to Prove Conduct - Exceptions - Other Crimes
Discussed
Title 20. Courts
 Cite
Name
Level

 20 O.S. 3001.1, Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 701.7, Murder in the First Degree
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA